Evelyn Ware **EBERHART**, Julia M. Moss, and Rev. Overton Harcourt Klinefelter, individually and on behalf of all others similarly situated,

v.

Sam **MASSELL**, Jr., individually and in his capacity as Mayor of the City of Atlanta, Georgia

and

Herbert T. Jenkins, individually and in his capacity as Chief of Police of the City of Atlanta, Georgia.

Civ. A. No. 13413.

United States District Court, N. D. Georgia, Atlanta Division.

April 20, 1970.

William H. Traylor, Albert M. Horn, Richard Roesel, Atlanta, Ga., for plaintiff.

Henry L. Bowden, Thomas F. Choyce, Atlanta, Ga., for defendants.

## ORDER

EDENFIELD, District Judge.

This is an action for injunctive and declaratory relief which the above-named plaintiffs seek to bring as a class action to challenge the constitutionality of three sections of the Atlanta City Code.[1] Jurisdiction is alleged under 28 U.S.C. § 1343 for a claim arising under 42 U.S.C. § 1983.

The complaint alleges that §§ 20-7(m), 20-11 and 20-117 of the Code of Ordinances are unconstitutional on their face and as applied in that they are vague and overbroad and infringe upon plaintiffs' First, Fifth, and Fourteenth Amendment rights "to speak, and associate with, and visit in the homes of those they wish, and [in] that they are being applied in a manner violative of those Amendments." The complaint as amended alleges that plaintiffs sue on behalf of themselves "and all residents of the City of Atlanta, Georgia, who own, are lessees of, or go upon real property used for the purpose of habitation or association;" i.e., the class plain-

1. The challenged sections are:

(1) § 20-7(m) (Disorderly Conduct) which makes it unlawful to "frequent any place where gaming or illegal sale or possession of alcoholic beverages or narcotics or dangerous drugs is practiced, allowed or tolerated."

(2) § 20-11 (Dives).

"(a) *Definition.* A place where alcoholic, malt, or vinous liquors are unlawfully kept or sold, and where persons, whether adults or minors or both, are permitted to come and drink spirituous, malt or vinous liquors either in the place or room where such liquors are unlawfully kept or sold, or in a place of business, or other place connected therewith, or in a place not connected with such place where such liquors are kept or sold, or where such persons drink alcoholic or vinous liquors or commit acts of immorality or gamble or engage in games of chance in such place, shall be known as a dive.

"(b) *Keeping, frequenting.* It shall be unlawful for any person to keep or maintain a dive. It shall also be unlawful for any person to go into a dive for the purpose of drinking alcoholic, malt or vinous liquors, or for any per-

son without visible means of support or who does not do any work to go to such place for the purpose of idling away his time, or for any person at such place to commit acts of immorality."

(3) § 20-117 (Opium Dens).

"Every person who shall set up, open, keep or maintain any house, room or place of any description for the smoking of opium or any compound or preparation thereof, or its injection or ingestion into the human body, or who shall be an inmate or frequenter of, or who shall in any way be connected with, any such house or place, or who shall contribute to its support, and every person who shall permit any such house, room or place in his possession or under his control to be used or occupied for any such purpose, and every person who shall permit or suffer any house, room or place which is to be used for such purposes to stand, be set up or opened upon any land owned, held, possessed or controlled by him, as owner, agent or otherwise, shall be guilty of maintaining a nuisance, and on conviction thereof in the municipal court shall be punished as provided in section 1-9 of this Code."

tiffs seek to represent includes all residents of the City of Atlanta.

Plaintiffs allege that (1) on March 22, 1969, Plaintiff Eberhart's home was entered by several police officers armed with a search warrant for illegal liquor; (2) the police officers found several quarts of tax-paid whisky and one shot glass of non-tax-paid liquor; (3) Plaintiff Eberhart was arrested and charged with violating § 20–11 (Operating a Dive), while everyone else in the building was arrested and charged with violation of § 20–7(m) (Disorderly Conduct), and § 20–11 (Occupying a Dive); and (4) Plaintiffs Eberhart and Moss were convicted and fined at a trial held in the Atlanta Municipal Court on April 10, 1969.

Plaintiffs allege further than (1) on September 17, 1969, several police officers of the City of Atlanta entered a home located at 537 Greenwood Avenue, N.E., armed with a search warrant for dangerous drugs and narcotics; (2) a search of the premises yielded approximately 30 "pills"; (3) the nine adults who were present when the officers entered were arrested and charged with various law violations, as was Plaintiff Klinefelter who arrived after the search began; (4) Plaintiff Klinefelter, who had been seen at the home before, "was charged with frequenting a dive in violation of § 20–7(m)" but was acquitted at his trial on September 18, 1969.

Plaintiffs contend that because they intend to continue to associate in their homes and other places with persons who may or do possess non-tax-paid liquor or illegal drugs, to associate with those who are using illegal drugs, and to drink in places where they know illegal liquor to be present, they will suffer irreparable injury to their right to freedom of speech and association as guaranteed by the United States Constitution unless this court restrains defendants and their agents from further enforcement of the challenged ordinances.

Following a hearing on February 10, 1970, all parties were permitted to file additional briefs and the case is now before the court for consideration of a motion to intervene as plaintiffs by three individuals, defendants' motion to dismiss, and plaintiffs' motion for summary judgment. For the reasons set forth below defendants' motion to dismiss will be granted and all other motions will be denied.

 Injunctions against enforcement of criminal statutes and ordinances will not issue unless there are special circumstances beyond the injury incidental to every proceeding brought lawfully and in good faith. Cameron v. Johnson, 390 U.S. 611, 618, 88 S.Ct. 1335, 20 L. Ed.2d 182 (1968). In Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), the United States Supreme Court recognized that mere prosecution under a statute which regulates expression and which is unconstitutional on its face, or under a statute which is being applied in bad faith for purposes of discouraging the exercise of protected First Amendment rights, gives rise to the irreparable harm which is a prerequisite to injunctive relief. But injunctive relief is not appropriate to interfere with the enforcement of state criminal laws which do not affect First Amendment rights, for in such cases mere prosecution will not produce irreparable harm. Dombrowski v. Pfister, *supra.*

 In the instant case the challenged ordinances are not on their face regulatory of expression but plaintiffs allege that the ordinances are vague and overbroad and that fear of prosecution under these ordinances interferes with "their rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution, to speak, and associate with, and visit in the homes of those they wish." The cases cited by plaintiffs do not, however, support their contention that the freedom of association which is protected by the First Amendment includes the "rights" they are here asserting and this court knows of no case which does support such a

contention.[2] The freedom of association which the Supreme Court has recognized as protected by the First Amendment is a right to freedom of expression through associational affiliations. B. Schwartz, a Commentary on the Constitution of the United States, 1 Rights of the Person, §§ 460–61.

"If we look at the elements of which the right of free association is composed, we find that it includes, as an obvious minimum, the right to *organize and join any association* for the advancement of beliefs and ideas, regardless of the nature of such beliefs and ideas, or whether they pertain to religious, political, economic, social, civil, cultural, or other matters." *Id.* at 366. (Emphasis added.)

Professor Schwartz goes on to point out that the right of association also includes the right to adhere to an organization without public identification, and the right not to be compelled to join any organization, but that the full enjoyment of these rights is limited to organizations for lawful purposes which are carrying on their activities in a lawful manner. Furthermore, "the right of association, like the right of expression in general, may not be used as a mere excuse for criminal conduct." *Id.* at 369.

■ The cases dealing with First Amendment freedom of association are legion [3] and without exception they lend support to Professor Schwartz's analysis; any contention that freedom of association embraces the "rights" asserted by these plaintiffs must be dismissed as utterly devoid of merit. It follows that the ordinances are not fairly challenged as violating First Amendment rights. Furthermore, since prosecutions are not threatened the danger of irreparable harm is not present and injunctive relief would be improper in any event.[4]

■ Concluding as we do that plaintiffs' First Amendment allegation is wholly insubstantial and that enjoining the enforcement of these criminal ordinances would not be proper under Dombrowski v. Pfister, *supra*; Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951); Machesky v. Bizzell, 414 F.2d 283 (5th Cir. 1969), and Sheridan v. Garrison, 415 F.2d 699, (5th Cir. 1969), we must nevertheless consider as a separate issue the question as to whether declaratory relief is appropriate. Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). We note particularly that plaintiffs have not challenged the City's power to provide a criminal sanction for the proscribed activity except insofar as it interferes with freedom of association. Although the complaint contains the words "vague", "overbroad", and "as applied", there is no contention that the meaning of the statute is unclear or that it is

---

2. The instant case is clearly distinguishable from Hunter v. Allen, 286 F.Supp. 830 (N.D.Ga.1968), aff'd. 422 F.2d 1158 (5th Cir. 1970), which plaintiffs cite in support of their freedom of association contention. Plaintiffs in *Hunter* were members of either the Atlanta Workshop in Non-Violence or the Southern Christian Leadership Conference; all had been arrested while engaging in protest demonstrations of one kind or another, and freedom of expression therefore was directly involved.

3. E. g., NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed. 2d 1488 (1958); Scales v. United States, 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961); United Mine Workers v.

Illinois State Bar Ass'n, 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967).

4. Mere apprehension of prosecution is not a threat of prosecution within the *Dombrowski* rationale. This was recognized by implication in Sheridan v. Garrison, 415 F.2d 699 (1969), where the Fifth Circuit concluded that the anti-injunction statute cannot apply when First Amendment rights are threatened because "the important remedy § 1983 provides under *Dombrowski* [when First Amendment rights are threatened] cannot reasonably be interpreted as applying only to those rare and fortuitous cases in which the aggrieved parties are somehow warned of prosecution in advance and are able to file their suit before it begins."

being applied for purposes of discouraging constitutionally protected activities.[5] Plaintiffs merely avow that they intend to continue to frequent the prohibited places, or to permit others to bring unlawful substances into their own homes and contend that the *effect* of the criminal sanction is to prevent their associating freely with their friends.

This case unfortunately presents a clear example of the widespread misuse or misunderstanding of the function and power of the federal courts in general and of the purpose and scope of the Civil Rights and Declaratory Judgment Acts in particular. Absent some unusual circumstance the federal courts do not interfere with the state's administration of its criminal laws, and the mere fact that a law is in force does not automatically provide everyone who might some day be affected by that law with standing to challenge its constitutionality in federal court. The instant case does not involve any ordinance which on its face regulates expression; the ordinances regulate conduct and any effect upon expression necessarily would be indirect. Nor is it substantially alleged that these ordinances are being applied in bad faith for purposes of discouraging exercise of protected First Amendment rights. Furthermore, there is nothing in the record to suggest that these plaintiffs are affected by the challenged ordinances in any way that the rest of the general population is not also affected; indeed the fact that they seek to represent all residents of the City of Atlanta negates any such possibility.[6] Although the complaint shows that at least two of the named plaintiffs have, in the past, been convicted of violating §§ 20–7(m) and 20–11 of the City Code, the Declaratory Judgment Act does not provide a means whereby previous judgments may be re-examined, nor is it a substitute for appeal or for post-conviction remedies. *E.g.*, Gajewski v. United States, 368 F.2d 533 (8th Cir. 1966); Shannon v. Sequeechi, 365 F.2d 827 (10th Cir. 1966); Sepulveda v. Colorado, 335 F.2d 581 (10th Cir. 1964); Forsythe v. Ohio, 333 F.2d 678 (6th Cir. 1964). *See also*, 26 C.J.S. Declaratory Judgments § 43 at 125, et seq.; Note, Criminal Declaratory Relief, 80 Harv.L. Rev. 1490, fn. 60 at 1504 (1967).

It is not even open to dispute that the constitutionality of a statute or ordinance may be challenged only by those whose rights are adversely affected, or are about to be adversely affected, by its operation. Barrows v. Jackson, 346 U.S. 249, 255, 73 S.Ct. 1031, 97 L. Ed. 1586 (1953); Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 463, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945); Brooks v. Briley, 274 F.Supp. 538, 547 (M.D.Tenn. 1967), aff'd., 391

---

5. We do not believe that the complaint can fairly be read to raise an issue as to whether the challenged ordinances violate either the due process or the equal protection clauses of the Fourteenth Amendment by punishing those who frequent the prohibited places without knowledge of the presence of unlawful liquor or drugs, for these plaintiffs avowedly intend to continue knowingly to frequent such places. Furthermore, if such an issue were raised by the complaint it clearly would present a hypothetical threat rather than a live controversy and would not be an appropriate issue for federal declaratory judgment. Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); Zwickler v. Koota, 389 U.S. 241, 244, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Maryland Casualty Co. v. Pacific Coal & Oil

Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

6. There is no suggestion whatever that any of the plaintiffs have prosecutions pending or threatened, and there is no allegation that anyone has ever been prosecuted or threatened with prosecution under § 20–117. Although those who seek to intervene as plaintiffs allege that they had prosecutions under §§ 20–7(m) and 20–11 pending when they filed their motion to intervene on February 2, 1970, with trial scheduled for February 5th, counsel for plaintiffs has informed the court that the trials were held and that the convictions have gone to the Superior Court on certiorari, so they would be in the same position as the other plaintiffs who are in effect attempting to invalidate prior convictions.

U.S. 361, 88 S.Ct. 1671, 20 L.Ed.2d 647 (1968). Although the court rejects as too broad plaintiffs' contention that "one who seeks to challenge [in federal court] the constitutionality of an ordinance must [merely] offer reasonable proof that he intends to engage in activities that the ordinance applies to, and that the ordinance will be enforced," United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), we note that even the standard urged by plaintiffs requires that the plaintiffs be attacking the statute as violative of the United States Constitution. Where, as here, the activity in question is manifestly not constitutionally protected, any allegation that the statute is unconstitutional merely because it restricts that activity necessarily fails to present a constitutional issue for determination.

The court concludes that the instant case presents neither an actual controversy nor a substantial constitutional attack upon the ordinances in question;

Accordingly, defendants' motion to dismiss is granted and all other motions are denied.