**Commonwealth v. Perry**

Before Mims, Bortner and Kelton, *JJ.*

*Robert E. Goldman*, for Commonwealth.
*Richard S. Wasserbly*, for defendant.

KELTON, *J.*, August 10, 1978—Defendant James Perry has filed post-trial motions for arrest of judgment and for a new trial asserting that section 2706 of the Crimes Code of December 6, 1972, P.L. 1482, sec. 1, 18 C.P.S.A. §2706, is unconstitutionally vague on its face and vague as applied to defendant's conduct. Defendant was tried before the undersigned without jury on March 7, 1978, and was found guilty on that date on two separate informations, alleging that terroristic threats were made against Sergeant Rufus Clark and Officer James Yates, both corrections officers at the Bucks County Prison.

We hold that section 2706 is not invalid. The facts of the case stated in the light most favorable to the Commonwealth are as follows:

On October 31, 1977, defendant was an inmate at the Bucks County Prison, Doylestown, Pennsylvania. At about 2:30 p.m. on that date, defendant was being returned to his cell after a conduct board hearing by two prison officers, Sergeant Rufus Clark and Officer James Yates. The testimony of the officers established that defendant began acting aggressively towards them and called Sergeant Clark a "cold nigger, an Uncle Tom," and stated

that "when he saw him on the street he was going to shoot him in the head." He also called Officer Yates "a fuckin' punk pussy" and said "if he saw him on the street he'd fuck him up."

On the following day, while waiting for a sheriff to take him out, defendant again made comments to Sergeant Clark as follows: "I get out in December and I'll get you and your family, you fucking pussy." Defendant then spat in Clark's face and jumped back raising his hands and saying, "Come on pussy, swing." At that point, other officers came between the two, but as defendant was being handcuffed, he was heard to say, "I'll have someone take care of you before I get out punk," and "I've got your address, pussy." The testimony also related that neither of the officers had done anything to provoke defendant.

Perry now argues to the court on his post-trial motions that section 2706 of the Crimes Code, under which he was convicted of the two separate offenses of terroristic threats against Officer Yates and Sergeant Clark, is too vague adequately to inform a citizen of what conduct is prohibited. Defendant then argues that the statute violates the due process clauses in the Fifth and Fourteenth Amendments to the United States Constitution, and article I, sec. 8, of the Pennsylvania Constitution. The Pennsylvania terroristic threats statute, which is based upon section 211.3 of the American Law Institute's Model Code reads:

"A person is guilty of a misdemeanor of the first degree if he threatens to commit any crime of violence with intent to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause

serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience." Act of December 6, 1972, P.L. 1482, sec. 1, 18 C.P.S.A. §2706.

Since the facts of the instant case only relate to that part of section 2706 providing that Perry did threaten " . . . to commit any crime of violence with intent to terrorize another . . . " we need not concern ourselves in this opinion with the constitutionality of the latter clauses in that section. Obviously, the conduct of defendant could not be held to have been intended to "cause the evacuation of . . . " the prison, nor do we find that it was intended " . . . otherwise to cause serious public inconvenience." We merely hold that beyond a reasonable doubt, defendant threatened to commit the crimes of simple or aggravated assault upon the two corrections officers, and that he intended to terrorize the officers.

We are aware of no Pennsylvania appellate authority bearing upon the statute's constitutionality. The only Pennsylvania case which clearly addresses the validity of section 2706 is Com. v. Howell, 1 D. & C. 3d 644 (1976). Although we have carefully reviewed the opinion of Judge Chalfin in the Howell case, we respectfully disagree with the result reached by Judge Chalfin and therefore hold in the instant proceedings that defendant Perry was properly convicted under section 2706 and that the statute is neither unconstitutional on its face nor unconstitutional as applied to the specific facts of this case.

The principal argument made by defendant in attacking the constitutionality of section 2706 is that the statute is vague in that the language of the

act does not set forth with precision precisely what conduct is prohibited.

The concept of vagueness has been defined by the United States Supreme Court in Grayned v. City of Rockford, 408 U.S. 104, 108-109, 92 S. Ct. 2294, 33 L. Ed. 2d 222, 227-228 (1972), as follows:

"Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly . . . Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissably delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' " See also, U.S. v. Harriss, 347 U.S. 612, 74 S. Ct. 808, 98 L. Ed. 989 (1954).

However, the court has limited the application of this vagueness rule in several respects. First, it has recognized that the English language itself is limited in its ability to set forth the precise conduct which is to be proscribed. See Broadrick v. Oklahoma, 413 U.S. 601, 608, 93 S. Ct. 2908, 37 L. Ed. 2d 830, 837 (1973).

"The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical

difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." Colten v. Kentucky, 407 U.S. 104, 110, 92 S. Ct. 1953, 32 L. Ed. 2d 584, 590 (1972). Therefore, "if the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague, even though marginal cases could be put where doubts might arise." Harriss, supra, 347 U.S. at 618. A statute satisfies the requirements of due process so long as it gives reasonable standards to guide prospective conduct: U.S. v. Powell, 423 U.S. 87, 94, 96 S. Ct. 316, 46 L. Ed. 2d 228, 235 (1975).

The Pennsylvania Supreme Court has held that facial attacks on a statute for vagueness generally will not be permitted unless infringements of First Amendment freedoms are asserted. See, e.g., Com. v. Heinbaugh, 476 Pa. 1, 4, 354 A. 2d 244, 245 (1976) (open lewdness statute). No such assertion is or can be made in this case.

As to the word "terrorize," we hold that it does describe a type of activity with sufficient precision to put a person on notice. While we know of no appellate authority in this state further defining the term, two Federal district courts have refused to enjoin state prosecutions under somewhat similar statutes where unconstitutional vagueness was asserted. In Armstrong v. Ellington, 312 F. Supp. 1119, 1126 (W.D. Tenn. 1970), the court stated: "[Terrorizing] means to reduce to terror by violence or threats, and terror means an extreme fear or fear that agitates body and mind. We hold that 'terrorizing' is specific enough and within the appropriate

area in which the State of Tennessee might protect the citizens even though expression might be involved." Likewise, in Masson v. Slaton, 320 F. Supp. 669 (N.D. Ga. 1970), a strikingly similar terroristic threat statute was held not to be invalid. The court ruled that there was nothing vague or indefinite in a prohibition against threatening to burn or damage property " . . . with the purpose of terrorizing another . . . "

In State v. Gunzelman, 210 Kan. 481, 502 P. 2d 705 (1972), on an appeal from a terroristic threat conviction, the Supreme Court of Kansas examined a statute very similar to our section 2706 to determine whether it was void for vagueness. Appellant there used the same argument posited by Mr. Perry, namely, that the statute was meant to apply to situations where threats were directed at public institutions, and not at threats directed at the person or property of an individual. In Gunzelman, the threats were made against a police officer who had arrested one of defendant's employes and the words used, i.e., to "get you," were virtually identical to Perry's. Although the court reversed defendant's conviction on other grounds which are not relevant herein and directed a new trial, the statute itself was found to be constitutional. The court said:

"Although the statute may have been directed at campus unrest, fire and bomb threats to public buildings and acts of mob violence the main elements of the offense are threats communicated with a specific intent to terrorize another. The wording of the statute appears sufficient to proscribe such threats whether directed generally against one or more persons and regardless of the purpose which the terrorist has in mind to ac-

complish." Gunzelman, supra, at 210 Kan. 486, 705 P. 2d 710. The court also held that the term "terrorize" was sufficiently precise to inform the average reader of the type of conduct it referred to.

In disposing of vagueness challenges to other sections of the Crimes Code, both the harassment section: Com. v. Duncan, 239 Pa. Superior Ct. 539, 363 A. 2d 803 (1976); and the failure to disperse section: Com. v. DeFrancesco, 75 D. & C. 2d 502, 27 Bucks 182 (1975), aff'd by Superior Court per curiam at 240 Pa. Superior Ct. 705, 360 A. 2d 235 (1976); have been found to be sufficiently definite to inform a person of average intelligence that a certain type of conduct was prohibited. See also Com. v. Heinbaugh, supra, as to the open lewdness section. By analogy, we hold that the terroristic threats section also gives adequate notice and thus is constitutional under both Federal and Pennsylvania due process standards.

As a final note, we find no merit in defendant's argument that the statute has been applied selectively to him. Defendant's witnesses simply were not in a position to know whether other prosecutions may have been instituted by the district attorney. Indeed, there may or may not be cases where other prisoners have not been prosecuted for similar threats, but defendant's evidence falls far short of establishing that the statute is being used to single out and punish particular individuals.

Accordingly, we decline to follow the decision of the Philadelphia County Court in Howell, supra, and choose instead to follow the decision of the Kansas Supreme Court in Gunzelman, supra. We, therefore, enter in each of the above cases, the following

## ORDER

And now, August 10, 1978, defendant's motions for new trial and in arrest of judgment are denied and overruled. Defendant is directed to appear for sentencing on a date to be fixed by the district attorney.